UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:05-CR-00214-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EBONY SHABAKA SHANIQUE<br><br>Defendant. | MEMORANDUM IN SUPPORT OF DEFENDANT'S PRO SE MOTION FOR COMPASSIONATE RELEASE |

Mr. Ebony Shabaka Shanique, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with multiple extremely high-risk, chronic medical conditions. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, Mr. Shanique has properly exhausted his administrative remedies by filing his release request with the Warden on July 7, 2020. *See Exhibit A: Inmate Request to Staff*. On July 16, 2020, Warden E. Bradley denied Mr. Shanique's compassionate release.

Mr. Shanique is forty-seven (47) years old and suffers from hypertension and has a history of asthmatic problems. *See Exhibit B: BOP Medical Records.* Aside from his medical conditions, Mr. Shanique was sadly shot years ago when he went to pick up a friend and due to the severity of his injuries, it was determined that the bullet could not be removed and it had to remain in his body. Dreadfully, this still gives Mr. Shanique a great deal of pain and he requires medication for the extreme pain, which has placed an exceptional burden on him both physically and mentally.[1]

---

[1] PSR, Page 11, Paragraph 39

Upon information from Mr. Shanique, the facility is failing to control the spread of the Coronavirus and the facility has had around a couple hundred active cases of the coronavirus, having it spread therein like wild-fire. Mr. Shanique is in custody at USP Canaan, a high security penitentiary facility in Waymart, Pennsylvania. Staff members and inmates have already been infected with COVID-19 at a rapid rate. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) USP Canaan currently has 208 inmates and 9 staff members who have tested positive for COVID-19. This pandemic is unnecessarily ravaging the individuals in the United States Bureau of Prisons (BOPs) and USP Canaan is just one example of such.

Most judges from the Eastern District of North Carolina, have granted Compassionate Release Requests. Compassionate Release is appropriate in a case like Mr. Shanique as a form of legally sanctioned mercy due to the dire circumstances that he is currently facing. Thus, it is respectfully requested that this Honorable Court issue an order reducing Mr. Shanique's sentence to time served and/or home confinement. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

## STATEMENT OF FACTS

On August 17, 2005, Ebony Shabaka Shanique was indicted in the Eastern District of North Carolina on a four count Indictment. Count 1 charged him with conspiracy to distribute and possess with the intent to distribute fifty (50) grams or more of cocaine base (crack); Counts 2 and 4 charged him, in separate counts, with distribution of five (5) grams or more of cocaine base (crack); and Count 3 with distribute five (5) grams or more of cocaine base (crack). PSR at page 4 ¶ 1-2. On November 7, 2005, Mr. Shanique plead guilty pursuant to a plea agreement to Count 1 and is

currently serving a 228 month. Accordingly, Mr. Shanique has served about 85% of his sentence and his projected release date is September 26, 2022.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On July 7, 2020, Mr. Shanique properly requested for Compassionate Release of the Warden of his facility, but unfortunately on July 16, 2020, likely not even enough time to review all of his medical records, he was denied, (which came as no surprise since that appears to be the common response in most cases by all BOPs). Thereafter, on September 23, 2020, Mr. Shanique filed his Pro Se Motion for Compassionate Release. *See* D.E. 87. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served

legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Shanique is unfortunately extremely vulnerable to hospitalization and serious illness that could have long lasting serious effect on his life due to his multiple high-risk conditions. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Shanique's request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

The defendant is—

(I)   suffering from a serious physical or medical condition;
(II)  suffering from a serious functional or cognitive impairment; or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Shanique's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. ***See Exhibit C: BOP Program Statement 5050.49.*** During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Shanique's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Shanique's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger

to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Shanique posed by COVID-19 warrants relief.

### A. This Honorable Court has the authority to determine that Mr. Shanique's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a

potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Copeland*, No. 1:03-cr-01120-FB-1, 2020 WL 2537250 (E.D. N.Y. May 19, 2020) (Motion for compassionate release granted where defendant "has long battled chronic Hepatitis C…") (emphasis added);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent

- *continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");*

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. The coronavirus is known to attack an individual's respiratory system. Accordingly, this pandemic, as applied to Mr. Shanique with his current chronic illness, especially when considering the severity and longevity of his medical ailments and problems and how they themselves impact his respiratory system, cumulatively demonstrate how his grim situation rises to the level of "an extraordinary and compelling" circumstance. That is, should Mr. Shanique find himself in the probable position of contracting the coronavirus while in the BOP, he would sadly find himself in a ominous situation with respect to his health and well-being, and would likely not be able to be treated as well if he was on the outside being able to receive full medical care and thus, having a fighting chance of at least not experiencing lifetime effects and/or surviving.

**B. Mr. Shanique's Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with **certain underlying medical conditions** are at increased risk for severe illness from COVID-19." CDC, *What to know about liver disease and*

*COVID.* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Those underlying conditions include Diabetes Type II; High Blood Pressure; Severe Asthma; High Cholesterol; Degenerative Disc Disease; Nerve Disorder in his hip; Ulcers; Gout; and Arthritis in his spine.

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates. Quite candidly, that supports the conclusion that even if the BOP is doing all they can, it is simply insufficient in being able to control the coronavirus and protect lives in the process.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[2]

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce

Mr. Shanique is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Shanique's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Shanique's compromised physical health, and the unique danger of contracting COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

Mr. Shanique has successfully completed many classes and obtained a series of Certificates at USP Canaan since the beginning of his incarceration. Mr. Shanique has had no incident reports or disciplinary actions against him. He does not have a have a history of violent behavior, his crimes do not involve minors. When balancing such factors alongside his high-risk due to his hypertension and asthma his case warrants relief. ***See Exhibit B.*** Release at this time would promote respect for the law because Mr. Shanique has served around 85% of his sentence. On March 20, 2006, the court sentenced Mr. Shanique to 228 months' imprisonment and five years'

---

the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

supervised release [D.E. 16]. He has now served not just the majority of his sentence, but around 85% of his sentence, thus showing a profound respect for the law as well. Alternatively, continuing a culture of mass incarceration and blind enforcement without regard to humanity or case-by-case analysis would not promote respect for the law.

Such a minimal reduction or modification of Mr. Shanique's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Shanique, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Shanique has an immediate release plan. He will be living with his father, Jeffrey Bates at 623 Clarion Lane, Chesapeake, Virginia. ***See Exhibit D: Statements from Mr. Shanique's family confirming his release plan, rehabilitation, and good moral character.*** Mr. Shanique's father will aid him in obtaining employment once released. Mr. Shanique wants to very eagerly go home and start to live a life free of his past life. He wants to go down the correct path that GOD will guide him through and wants to prove to his family and himself, that if given a second chance, will be a law-abiding citizen.

## CONCLUSION

Mr. Shanique has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 22nd day of January 2021.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Laura Howard
>Assistant United States Attorney
>Laura.howard2@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 22nd day of January 2021.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney